IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHARLES DAVID SCHEUERMAN t/a
Bel Air Gun & Pawn,

    Petitioner,

v.                                    CIVIL NO.: WDQ-06-2143

ARTHUR W. HERBERT, Director
of Industry Operations,
Baltimore Field Division,[1]
Bureau of Alcohol, Tobacco,
Firearms, and Explosives,

    Respondent.

MEMORANDUM OPINION

Charles David Scheuerman, trading as Bel Air Gun & Pawn ("Scheuerman"), has petitioned for *de novo* review of the decision of Arthur W. Herbert, acting in his capacity as Director of Industry Operations, Baltimore Field Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "Baltimore ATF"), to revoke Scheuerman's federal firearms-dealer license. Pending are the Baltimore ATF's motion for summary judgment and Scheuerman's unopposed motion for leave to file a revised memorandum in opposition. As Scheuerman's motion is to correct factual errors in his original opposition to ATF's motions, the revisions are

---

[1] The Docket will be amended to reflect Herbert is responding in his capacity as Director of Industry Operations for the Baltimore Field Division, vice the Washington Field Division.

not prejudicial to the Baltimore ATF, and the motion is unopposed, it will be granted.  For the following reasons, the Baltimore ATF's motion for summary judgment will also be granted.

I.  Background

Scheuerman is a retailer located in Fallston, Maryland, who sells, among other items, firearms.  Pet. 1, ¶ 4.

In May 2005, an inspection by the Baltimore ATF resulted in Scheuerman being cited for 817[2] violations of the GCA. Administrative Record ("AR") 10-13 (Baltimore ATF Notice of Revocation of License).

On October 7, 2005, Scheuerman received notice of the Baltimore ATF's revocation of his federal firearms-dealer license, and timely requested an administrative hearing (the "ATF Hearing") under 18 U.S.C. § 923(f)(2).  Pet. ¶ 6, 7.

On March 23, 2006, the ATF Hearing was held; and, on June 19, 2006, Scheuerman received the Baltimore ATF's final notice of its revocation of Scheuerman's license.  *Id.* ¶¶ 8, 9.

On August 18, 2006, Scheuerman filed his Petition with this

---

[2] Although the Baltimore ATF's notice of revocation states a total of 187 violations for Count IX, the sub-parts of the count add up to 197 violations, as indicated in the Administrative Record at page 281, which makes the total number of violations 817, vice 807.  One additional citation for selling a firearm to a New Jersey resident in violation of New Jersey law was dismissed after Scheuerman's administrative hearing.  AR 13, 510 (Baltimore ATF's Findings of Fact and Conclusions of Law).

Court for *de novo* review of the Baltimore ATF's revocation decision under 18 U.S.C. § 923(f)(3).[3]

II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Thus, "the judge must ask . . .

---

[3] 18 U.S.C. § 923(f)(3) provides in part that if the Attorney General, after conducting a hearing as required under § 923(f)(2), decides not to reverse the decision to revoke a dealer's license:
> [t]he aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation.

3

whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A district court may grant summary judgment when reviewing a firearms license revocation pursuant to 18 U.S.C. § 923(f)(3), provided no issues of material fact are in dispute." *DiMartino v. Buckley*, 19 Fed. App'x 114, 115 (4th Cir. 2001) (unpublished opinion) (*citing Cucchiara v. Secretary of Treasury*, 652 F.2d 28, 29-30 (9th Cir. 1981)).  The court may "consider any evidence submitted by the parties regardless of whether that evidence was submitted in the administrative proceeding." *DiMartino v. Buckles,* 129 F. Supp. 2d 824, 827 (D. Md. 2001), *aff'd per curiam*, *DiMartino*, 19 Fed. App'x 114; 18 U.S.C. § 923(f)(3).  An evidentiary hearing is not required unless "[a] good reason to hold such a hearing . . . either appear[s] in the administrative record or [is] presented by the party petitioning for judicial review." *DiMartino*, 19 Fed. App'x at 116 (*citing Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980)).

III. Discussion

A. The Regulatory Scheme

The Gun Control Act of 1968,[4] as amended (the "GCA"), 18 U.S.C. §§ 921-931, authorizes the Attorney General to license manufacturers, importers, and dealers of firearms.  18 U.S.C. § 923(a).  The Attorney General has delegated his functions and powers under the GCA to the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF").  28 C.F.R. § 0.130(a)(1).[5]

Under 18 U.S.C. § 923(g)(1)(A), every licensed firearms dealer must maintain certain records, *inter alia*, the receipt and disposition of firearms at his place of business.  Title 18 U.S.C. § 922(m) provides in part that it is unlawful for a licensed dealer "knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder."

The regulations issued pursuant to § 923 in 27 C.F.R. Part 478 provide further detailed requirements for documenting a dealer's acquisition and disposition of firearms.  27 C.F.R. §

---

[4] Pub. L. No. 90-618, 82 Stat. 1213 (1968).

[5] For simplicity, the Court may refer to the ATF where Congress has empowered the Attorney General under the GCA. *Blaustein & Reich, Inc. v. Buckles*  365 F.3d 281, 284 n.3 (4th Cir. 2004).

5

478.125(e) provides in part the required information and the time and manner in which it is to be recorded.  More specifically, § 478.125(e) requires licensed dealers to record a transfer to a "nonlicensee" on Form 4473.  27 C.F.R. § 478.125(e).[6]  Title 27 C.F.R. § 478.21(a) authorizes the ATF to prescribe the forms required under Part 478, and requires all of the information called for on each form to be furnished as indicated by the form's headings and instructions and as required under Part 478.  Section 478.124(c) further details the information required by Form 4473 and the necessary procedures to be taken by the licensed dealer to verify that the transferee of a firearm is not

---

[6] 27 C.F.R. § 478.125(e) provides in part that:
[E]ach licensed dealer shall enter into a record each receipt and disposition of firearms. . . .  The purchase or other acquisition of a firearm shall . . . be recorded not later than the close of the next business day following the date of such purchase or acquisition.  The record shall show the date of receipt, the name and address or the name and license number of the person from whom received, the name of the manufacturer and importer (if any), the model, serial number, type, and the caliber or gauge of the firearm.  The sale or other disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction.  When such disposition is made to a nonlicensee, the firearms transaction record, Form 4473, obtained by the licensed dealer shall be retained, until the transaction is recorded, separate from the licensee's Form 4473 file and be readily available for inspection. . . .  The record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically.

6

prohibited by law from possessing a firearm, including the required background checks using the Attorney General's National Instant Criminal Background Check System (the "NICS"), promulgated under 18 U.S.C. § 922(t) and detailed in 27 C.F.R. § 478.102.  27 C.F.R. § 478.124(c).[7]  Section § 478.126a provides

---

[7] 27 C.F.R. § 478.124(c) provides in part that:
(1) Prior to making an over-the-counter transfer of a firearm to a nonlicensee . . . the . . . licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing the transferee's name, sex, residence address . . . date and place of birth; height, weight and race of the transferee; the transferee's country of citizenship; the transferee's INS-issued alien number or admission number; the transferee's State of residence; and certification by the transferee that the transferee is not prohibited by the Act from transporting or shipping a firearm in interstate or foreign commerce or receiving a firearm which has been shipped or transported in interstate or foreign commerce or possessing a firearm in or affecting commerce.
. . .
(3) After the transferee has executed the Form 4473, the licensee:
(i) Shall verify the identity of the transferee by examining the identification document (as defined in § 478.11) presented, and shall note on the Form 4473 the type of identification used;
. . .
(iv) Shall comply with the requirements of § 478.102 [providing necessary steps under the NICS]  and record on the form the date on which the licensee contacted the NICS, as well as any response provided by the system, including any identification number provided by the system.
(4) The licensee shall identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm.
(5) The licensee shall sign and date the form if the licensee does not know or have reasonable cause to believe that the transferee is disqualified by law from receiving the firearm and transfer the firearm described on the Form

particular reporting requirements for the licensed dealer for "multiple sales" of firearms, defined in the regulation as the sales of "two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more, to an unlicensed person" within five consecutive business days.  27 C.F.R. § 478.124a.

B.  Conditions for License Revocation

   Title 18 U.S.C. § 923(e) provides in part that

   [t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated *any* provision of this chapter or *any* rule or regulation prescribed by the Attorney General under this chapter.

18 U.S.C. § 923(e) (emphasis added).  Wilfulness may be demonstrated by, "among other things, a disregard of or an indifference to known legal obligations."  *RSM, Inc. v. Herbert*, 466 F.3d 316, 321 (4th Cir. 2006) (*citing Bryan v. United States*, 524 U.S. 184, 197-99 (1998)).  "[A] court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." *Id.* at 322.

   A licensee's plain indifference to his legal requirement to act may be inferred as a matter of law when, "after repeated

---

   4473.

failures, warnings, and explanations of the significance of the failures" by enforcement officials, such errors continue. *Id*. Once wilfulness is determined, "[a] *single* violation is sufficient for denying an application or revoking a license." *DiMartino v. Buckles,* 129 F. Supp. 2d 824, 827 (D. Md. 2001), *aff'd per curiam*, *DiMartino v. Buckley*, 19 Fed. App'x 114, 115 (4th Cir. 2001) (unpublished opinion).

C.  Analysis

Scheuerman argues that, to find his violations were willful, the Baltimore ATF must show that he "consciously disregarded the law" and that his actions were "an aggravated or extreme departure from standards of ordinary care." Opp'n 6, 8 (internal quotation marks omitted). That is not the law. *RSM*, 466 F.3d at 322.

Scheuerman has admitted multiple violations of the GCA, and the wilfulness of those violations is demonstrated by his admitted knowledge of the GCA's requirements and continued failures to follow the law despite warnings and instructions received after previous GCA violations.

Scheuerman has been in the business of selling firearms since 1992. Hearing Transcript ("HT") 277 *ll.* 21-23. He testified at his ATF Hearing that he has understood the GCA's record-keeping requirements, including those regarding the

9

dealer's Acquisition and Disposition Record (the "A&D Book"), Form 4473, and multiple sales reporting since 1992.  HT 278-82.

Scheuerman admitted that in 1992 a Baltimore ATF compliance inspection of his business found violations of the GCA's record-keeping requirements, after which the violations were explained to him by the ATF inspectors.  HT 280.

On October 21, 1999 the Baltimore ATF again inspected Scheuerman's business and discovered 120 violations of the GCA.[8] AR 88.  Eighty-six firearms were missing from Scheuerman's inventory without any record of their disposition.  *Id*.  Eight more firearms were in his inventory without any record of their acquisition, and there were 26 other instances of incorrect information in his A&D Book.  *Id*.  The violations were explained to Scheuerman, and he was instructed to correct the discrepancies by November 4, 1999.  HT 300; AR 88.  Scheuerman admitted at his ATF hearing in March 2006 that he had yet to make all of the ordered corrections.  HT 300.

Scheuerman raises a variety of factual and legal challenges to many of the 817 violations cited in May 2005, yet numerous undisputed violations remain to demonstrate Scheuerman's plain indifference to his known legal obligations.  Scheuerman concedes

---

[8] Specifically, the omissions were violations of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 178.125(e), currently 27 C.F.R. § 478.125(e).

10

that: he failed to timely record the acquisition of nine firearms for repair (HT 283-84; Opp'n 9); he failed to enter a firearm acquired for sale in his A&D Book (Opp'n 11); the dispositions of 114 firearms were recorded on the wrong line of his A&D Book (*id.* at 12); the dispositions of 124 firearms missing from his inventory were not recorded in his A&D Book (HT 285);[9] five firearms added to Scheuerman's personal collection were not recorded as such in his A&D Book (HT 286);[10] the acquisitions of

---

[9] The Baltimore ATF directed Scheuerman to report the missing firearms on an ATF Form 3310.11 "Theft/Loss Report," as required under 18 U.S.C. § 923(g)(6) and 27 C.F.R. § 478.39a. Scheuerman argues that because he then reported the firearms as lost or stolen, their absence from his inventory was not a "disposition" required to be recorded under 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e), citing the court's *dicta* in *General Store In.c v. Van Loan*, No. CV-06-103-FVS, Slip Op. 2007 WL 208425, at *7 (E.D. Wash. Jan. 24, 2007) ("it is questionable whether the theft of a firearm from, or the loss by, a federally licensed firearms dealer constitutes a disposition within the meaning of paragraph (e) of § 478.125").

Here, as in *General Store*, it is not necessary to answer whether a theft or loss is a "disposition" under 27 C.F.R. § 478.125(e). Scheuerman admitted to an ATF inspector that he believed many of the missing firearms had been transferred to other licensed dealers without documenting their disposition, and testified that the failure to record the disposition of the missing firearms occurred because of human error. HT 71, 285.

[10] Scheuerman contends that 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.125(e) do not require that firearms intended to be acquired by the licensee for his personal collection be recorded as dispositions in the A&D Book.

However, Scheuerman admitted to an ATF investigator that the firearms belonged to him. HT 138. The firearms were kept in Scheuerman's safe on the business premises and were not offered for sale. Opp'n 16, HT 252. 27 C.F.R. § 478.125(e) requires the licensee to record each disposition, and makes no exception for firearms transferred to the dealer's personal collection.

11

49 firearms were recorded twice, and the disposition entries of two firearms were transposed (*id*.); he failed to report the sale of multiple handguns on ten occasions (*id*. at 288); he twice transferred a firearm after the 30-day NICS time limit without initiating another NICS background check (*id*. at 292-93); he failed to ensure proper completion of Forms 4473 on 174 occasions[11] (*id*. at 293, Opp'n 37); and he failed to retain three Forms 4473 by which an NICS check was initiated but the firearm transfer did not occur.  There are 492 violations for which Scheuerman admits the factual basis and is unable to raise an adequate legal defense.

IV.  Conclusion

Scheuerman's admitted knowledge of his legal obligations as a licensed dealer under the GCA since 1992, and the numerous undisputed violations in 2005, despite prior citations and explanations of his responsibilities in 1992 and 1999, demonstrate a plain indifference to those obligations from which the Court infers wilful conduct.  Accordingly, the Court finds that the material facts supporting the Baltimore ATF's authorization to revoke Scheuerman's license are not in dispute,

---

[11] Specifically, Scheuerman does not challenge the 22 failures to complete Form 4473 items 19a, 19b, 19c, or 19d, the two failures to complete item 26, or the 150 failures to complete items 32 and 34.  Opp'n 37.

12

and will grant the Baltimore ATF's motion for summary judgment.


<u>May 15, 2007</u>                              <u>          /s/          </u>
Date                                     William D. Quarles, Jr.
                                         United States District Judge